

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-25-00166-CR

_____

QUINTON GIPSON, Appellant

V.

THE STATE OF TEXAS

On Appeal from the 371st District Court
Tarrant County, Texas
Trial Court No. 1841462

Before Sudderth, C.J.; Wallach and Walker, JJ.
Memorandum Opinion by Justice Walker

**MEMORANDUM OPINION**

Appellant Quinton Gipson appeals his conviction for possession of, with intent to deliver, a controlled substance (fentanyl) in an amount of four grams or more but less than 200 grams. In his only point, Gipson argues that the trial court erred in denying his motion to suppress. Gipson had filed a pretrial motion to suppress evidence that he claimed was "discovered as a result of [an] illegal intrusion and search" of his motel room. Because the evidence Gipson sought to suppress was obtained as the result of an initially unreasonable search of his motel room, we agree that the trial court erred in denying his motion. And, because the trial court's error was not harmless beyond a reasonable doubt, we will reverse the trial court's judgment.

## I. EVIDENCE AT THE SUPPRESSION HEARING

The only evidence admitted at the hearing on Gipson's motion to suppress consisted of the testimony of the police officer who made the initial warrantless entry into Gipson's motel room and a video from the officer's body-worn camera. Viewed in a light most favorable to the trial court's ruling, that evidence showed that the officer conducted an illegal search of Gipson's motel room.

In September 2024, Gipson was the target of a Fort Worth Police investigation. The police had identified Gipson as an individual who they believed to be selling drugs at a Super 8 Motel in south Fort Worth. Officer Dewayne Lee of the narcotics unit conducted surveillance at the motel and saw that "Gipson would enter and exit

2

the motel frequently," leading Officer Lee to believe that Gipson had a room at the motel. Officer Lee also saw Gipson "meeting with females in the parking lot" of the motel. The females would walk into the motel with Gipson, and he would sometimes leave the motel alone.

One night, Officer Lee and other officers went to the motel to arrest Gipson.[1] Upon their arrival at the motel, the officers observed "female individuals [meet] with . . . Gipson at the front of the lobby and . . . walk[] into the motel" around 7:00 p.m. Less than an hour later, Gipson exited the motel, and the police arrested him in the motel's parking lot. At this time, Officer Lee saw individuals outside the motel "using their cellphones and gathering in front of the motel." Although he had not yet confirmed that Gipson had a room at the motel, much less that anybody was in the room, Officer Lee "was concerned that those individuals [on their phones] could contact the females that were inside of the motel room in order to notify them [that] Gipson had been taken into custody[ and] to destroy the evidence at that point."

Immediately after Gipson's arrest, Officer Lee walked into the motel and asked the clerk at the front desk, "What room did [Gipson] come from?" The clerk told him, "[r]oom 124," and provided him with a receipt showing that Gipson had paid for

---

[1]It is undisputed that Gipson was arrested pursuant to a warrant. Consistent with his arguments in the trial court, Gipson does not challenge the legality of his arrest on appeal.

3

a room at the motel.[2]  Officer Lee then asked the clerk if Gipson had "anybody else staying in there," to which the clerk responded, "I'm not sure.  Usually he's the only one that comes and pays for the room."  At Officer Lee's request, the clerk provided him with a copy of the receipt and a key card to the room.

Officer Lee then walked directly to room 124 without interacting with anyone else inside the motel.[3]  He waited outside the room, keeping the door to the room in his line of sight and remaining within earshot of the room, while he waited for another officer to arrive.  Officer Lee waited outside the room for "[a]pproximately four minutes."[4]  While waiting, he "heard the sound of a female talking inside of the room."

After the other officer joined Officer Lee outside the room, Officer Lee used the key card to unlock the door.  The two officers did not immediately enter the room but opened the door while knocking and announcing their presence as Fort Worth Police.  They saw two women inside and asked if there was anybody else in the room.

---

[2]Although not offered into evidence at the hearing, the receipt appears in the video and is legible when the video is paused.  It contains the room number and Gipson's first and last name.

[3]Officer Lee testified at the hearing that he "did not interact with any individuals between the time [that] Gipson was arrested, besides the motel employee." However, on the video, Officer Lee can be heard communicating information, presumably to other officers, before walking to the room.

[4]The video shows that it was almost exactly four minutes from the time Officer Lee first got to the room to when the other officer joined him.

4

The women denied that there was anyone else there, but Officer Lee told them, "All right. We're just gonna make sure." Officer Lee then entered the room and walked around "to prevent the destruction of the evidence and make sure that the scene was safe for officers to conduct their investigation," checking "voids" that he could not see from the doorway. He did not find any other persons inside the room, but he did see illegal narcotics in plain view.[5] Officer Lee was in and out of the room in less than 30 seconds.

After speaking with the two women, Officer Lee drove to the Fort Worth city jail and obtained a search warrant for room 124.[6]

At the suppression hearing, Officer Lee testified that he entered Gipson's motel room when he did "to prevent the destruction of the evidence and make sure that the scene was safe for officers." He testified that, in his experience, "a drug dealer does not keep all of [his] narcotics on [his] person for every drug transaction.

---

[5]Although the probable cause affidavit that Officer Lee provided for a warrant to search the room later that evening was not offered into evidence at the suppression hearing, Gipson quoted from the affidavit in his motion to suppress: "While clearing the room, your affiant observed in plain view a clear plastic bag containing light blue circular pills and . . . several knotted bags with a white crystalline substance that your affiant believed, due to my training and experience, to be methamphetamine." Gipson was indicted in November 2024 on drug charges related to methamphetamine, fentanyl, and cocaine. At the suppression hearing, the trial court took judicial notice of the contents of its file. *See* Tex. R. Evid. 201.

[6]The video stops at 8:14 p.m., when Officer Lee was still at the motel. Officer Lee testified at the hearing that the warrant to search the room was signed at 9:38 p.m.

5

It would be highly likely for [the dealer] to have a separate place where [he] keep[s] . . . the rest of [his] narcotics while doing a drug deal." Officer Lee admitted that he did not have probable cause to get a search warrant for Gipson's motel room until he learned the room number. When asked why he did not stop in the lobby and proceed to get a warrant once he learned the room number, Officer Lee testified to his "belief that there were other individuals that may be at the location . . . destroying evidence."

Officer Lee also testified that, when he heard a female talking inside the motel room, it led him "to believe that the females that . . . Gipson had been seen with may be inside of the room . . . [with] access to the drug evidence[,] and could possibly be destroying that evidence or gathering a firearm or other such item to harm officers." He explained that "drug dealing is inherently dangerous" and that it was "not unlikely that there may have been another individual inside that wanted to do harm to officers while [they were] preventing [the] destruction of evidence." He averred that the police believed that it was possible that the people whom they had seen with cell phones outside the motel before and during the arrest "could have forewarned the individuals inside of the room to destroy that evidence." Officer Lee elaborated that the area where the motel is located "[wa]s known to [him] to cater to narcotics sales and prostitution" and that it was "not unlikely that an individual would know . . .

Gipson through his sales of narcotics[] or [that] the females [who] were inside could have been . . . forewarned."[7]

Officer Lee acknowledged that he had used the term "safety sweep" or "sweep for safety" in his probable cause affidavit. He maintained that the purpose for his initial, warrantless entry into Gipson's motel room was "[t]o prevent the destruction of evidence and to continue the investigation in a manner that was safe for all officers involved." He clarified that "[t]he safety sweep was a part of that."

## II. THE TRIAL COURT'S RULING AND ADMISSION OF EVIDENCE FROM THE MOTEL ROOM

The trial court found that Officer Lee's initial "sweep" was "clearly a warrantless search of a motel room" in which Gipson had a reasonable expectation of privacy. The trial court further concluded as a matter of law, "Under the Fourth Amendment, the only way that [Officer] Lee's entry into the motel room is justified is under exigent circumstances." The trial court went on to conclude that Officer Lee's actions were "reasonable under the circumstances":

---

[7]At the hearing, Officer Lee never positively identified the two women who were in Gipson's motel room as the same women he had seen Gipson with earlier on the evening of his arrest. When asked if he had listed the females he had seen meet with Gipson and walk into the motel with him in his police report, Officer Lee testified, "I listed two females in my report," and identified the two women whom he later found in Gipson's motel room by name. But Officer Lee went on to testify that the police did not have those females identified before he entered the motel room. And, when asked if he had seen the women whom he found in Gipson's motel room before, Officer Lee testified that he had "not seen them personally, no."

7

It seemed to me he was in and out in 30 seconds, and he was looking specifically in areas where there might be people hiding who could get to officers. He didn't touch anything, other than the items that he was asked to retrieve by the ladies who had been escorted from the motel room. He didn't rifle through any drawers. He didn't turn over any pieces of luggage or clothing to snoop around.

What it appeared to the [trial c]ourt, having watched both his testimony and the video, is he was doing a cursory sweep of the room to make sure there were no other persons in that room left behind who might destroy evidence. And so he was there to secure the scene and prevent the destruction of evidence.

The trial court denied Gipson's motion to suppress, finding that Officer Lee's belief "that evidence would be destroyed had he not done what he did" was reasonable based on the totality of circumstances. At trial, evidence seized from the motel room after the search warrant had been signed—including fentanyl and cocaine—was admitted. The jury convicted Gipson on one count of possession of, with intent to deliver, a controlled substance listed in Penalty Group 1-B (fentanyl) in an amount of four grams or more but less than 200 grams and assessed his punishment at 25 years' imprisonment.[8]

## III. OUR ANALYSIS

We begin our analysis by dispensing with what the parties and the trial court all (rightly) agree on: Officer Lee conducted a warrantless search of a motel room in

---

[8]The jury also acquitted Gipson on a separate count of possession of, with intent to deliver, a controlled substance listed in Penalty Group 1 (cocaine) in an amount of four grams or more but less than 200 grams.

8

which Gipson had a reasonable expectation of privacy. What this case comes down to is whether any exception to the Fourth Amendment's warrant requirement applied.

## A. APPLICABLE FOURTH AMENDMENT LAW

The Fourth Amendment protects against unreasonable searches and seizures by government officials. U.S. Const. amend. IV; *Wiede v. State*, 214 S.W.3d 17, 24 (Tex. Crim. App. 2007). A defendant seeking to suppress evidence on Fourth Amendment grounds bears the initial burden to produce some evidence that the government conducted a warrantless search or seizure that he has standing to contest. *Rawlings v. Kentucky*, 448 U.S. 98, 104–05, 100 S. Ct. 2556, 2561 (1980); *State v. Martinez*, 569 S.W.3d 621, 623 (Tex. Crim. App. 2019). Once the defendant does so, the burden shifts to the State to prove either that the search or seizure was conducted pursuant to a warrant or, if warrantless, was otherwise reasonable. *Martinez*, 569 S.W.3d at 623–24.

Whether a search is reasonable under the totality of the circumstances is a question that we review de novo. *Ornelas v. United States*, 517 U.S. 690, 696–99, 116 S. Ct. 1657, 1661–63 (1996); *Kothe v. State*, 152 S.W.3d 54, 62–63 (Tex. Crim. App. 2004). In the process, we must balance the public interest and the individual's right to be free from arbitrary detentions and intrusions. *Kothe*, 152 S.W.3d at 63. A warrantless search is per se unreasonable unless it falls within a recognized exception to the warrant requirement. *State v. Garcia*, 569 S.W.3d 142, 148 (Tex. Crim. App. 2018).

9

"One such exception is based upon the existence of exigent circumstances." *Igboji v. State*, 666 S.W.3d 607, 613 (Tex. Crim. App. 2023). This exception applies when "the exigencies of the situation make the needs of law enforcement so compelling that a warrantless search is objectively reasonable under the Fourth Amendment." *Kentucky v. King*, 563 U.S. 452, 460, 131 S. Ct. 1849, 1856 (2011) (cleaned up). Whether law enforcement faced an exigency that justified acting without a warrant calls for a case-by-case determination based on the totality of the circumstances existing at the time of the search or seizure. *Igboji*, 666 S.W.3d at 613.

To validate a warrantless search based on exigent circumstances, the State must satisfy a two-step process: (1) there must be probable cause to enter or search a specific location; (2) an exigency that requires an immediate action on the part of law enforcement must exist. *Id.* at 613–14; *see Estrada v. State*, 154 S.W.3d 604, 609 (Tex. Crim. App. 2005) ("In order to support a warrantless search, probable cause, in combination with some sort of exigent circumstances, must exist."). Probable cause to search a specific location exists when reasonably trustworthy facts and circumstances within the knowledge of the officer on scene would lead a person of reasonable prudence to believe that the instrumentality of a crime or evidence of a crime will be found. *Igboji*, 666 S.W.3d at 613; *Estrada*, 154 S.W.3d at 609. And, as pertinent to this case, "preventing the destruction of evidence or contraband" is one category of exigent circumstances that justify a warrantless intrusion by police. *Igboji*, 666 S.W.3d at 613; *see King*, 563 U.S. at 460, 131 S. Ct. at 1856 (recognizing that "the

10

need 'to prevent the imminent destruction of evidence' has long been recognized as a sufficient justification for a warrantless search" (quoting *Brigham City v. Stuart*, 547 U.S. 398, 403, 126 S. Ct. 1943, 1947 (2006))); *see also Honish v. State*, No. 02-11-00407-CR, 2013 WL 1759903, at *5 (Tex. App.—Fort Worth Apr. 25, 2013, pet. ref'd) (mem. op., not designated for publication) ("Exigent circumstances exist allowing a warrantless search when officers have a reasonable belief that evidence or contraband will be destroyed before they can obtain a search warrant.").[9]

## B. STANDARD OF REVIEW

We apply a bifurcated standard of review to a trial court's ruling on a motion to suppress evidence. *State v. Martinez*, 570 S.W.3d 278, 281 (Tex. Crim. App. 2019). Because the trial judge is the sole trier of fact and judge of the witnesses' credibility and the weight to be given their testimony, *Wiede*, 214 S.W.3d at 24–25, we defer almost totally to a trial court's rulings on questions of historical fact and application-of-law-to-fact questions that turn on evaluating credibility and

---

[9]The Court of Criminal Appeals has identified "protecting police officers from persons whom they reasonably believe to be present, armed, and dangerous" as a category of exigent circumstances separate and different from preventing the imminent destruction of evidence. *Igboji*, 666 S.W.3d at 614. We will explain why the protecting-police-officers category of exigent circumstances is inapplicable to this case after we discuss the preventing-the-destruction-of-evidence category.

11

demeanor.[10]  But we review de novo application-of-law-to-fact questions that do not turn on credibility and demeanor, *Martinez*, 570 S.W.3d at 281.

When, as here, the trial court makes explicit fact findings, we determine whether the evidence, when viewed in the light most favorable to the trial court's ruling, supports those findings.  *Johnson v. State*, 414 S.W.3d 184, 192 (Tex. Crim. App. 2013).  We then review the trial court's legal ruling de novo unless its explicit fact findings that are supported by the record are also dispositive of the legal ruling.  *State v. Kelly*, 204 S.W.3d 808, 818 (Tex. Crim. App. 2006).

## C. APPLICATION

### 1.  The exigent-circumstances exception does not apply here.

Neither Gipson nor the State disputes that Officer Lee had probable cause to search Gipson's motel room when he entered it without a warrant, and we have little difficulty determining that he did.  Police had witnessed Gipson engage in multiple drug deals in the days leading up to his arrest, and Officer Lee acted quickly as soon as Gipson was arrested to learn Gipson's room number.  Officer Lee testified that, in his experience, drug dealers do not keep all of their narcotics on their persons and that it would be highly likely for a dealer such as Gipson to have a place where he stashed the rest of his narcotics.  Once Officer Lee learned the specific room where

---

[10]Likewise, we review a trial court's videotape-based determination of historical facts under the same deferential standard.  *Montanez v. State*, 195 S.W.3d 101, 108–09 (Tex. Crim. App. 2006).

Gipson was staying and the motel clerk denied knowing anybody else associated with that room, Officer Lee had probable cause to search the room. Thus, the State satisfied the first prong of the exigent-circumstances test. *See Igboji*, 666 S.W.3d at 613; *Estrada*, 154 S.W.3d at 609.

Turning to the second prong—whether an exigency requiring an immediate law enforcement action existed—the evidence at the suppression hearing does not support the trial court's conclusion. The Court of Criminal Appeals has instructed:

> When confronted with an urgency that requires immediate police action and does not allow for the procurement of a warrant, law enforcement is authorized to take reasonable steps to secure the status quo. But this exception to the warrant requirement does not grant police the unfettered discretion to take any course of action, however disproportionate it may be to the perceived exigency.

*Gutierrez v. State*, 221 S.W.3d 680, 686 (Tex. Crim. App. 2007). More recent precedent from the Court of Criminal Appeals underscores this principle. In *Turrubiate v. State*, a sheriff's deputy was informed by an investigator who had just visited the appellant's home that the home smelled like marijuana. 399 S.W.3d 147, 149 (Tex. Crim. App. 2013), *abrogated in part on other grounds by Igboji*. When the investigator and the deputy then knocked on the appellant's door, the appellant cracked open the door, and the deputy smelled "a very strong, fresh odor of marijuana" coming "from the crack in the door." *Id.* In light of his "suspicion . . . that there was possible marijuana in the house," the deputy forcibly entered the home without a warrant, determining that entry was required to "prevent [the marijuana] from being destroyed" and to preserve

13

it for use in prosecution. *Id.* The deputy thought that if he had left to obtain a warrant, then it would have "ma[d]e the evidence available for destruction." *Id.* Although the trial court denied the appellant's motion to suppress the evidence, the Court of Criminal Appeals said that "nothing in the record suggest[ed] that destruction of evidence was imminent under the circumstances." *Id.* at 154. "[G]iven the absence of evidence . . . showing that the destruction of evidence was imminent," the Court reasoned, "the record d[id] not support the deputy's warrantless entry into [the] appellant's home on that basis." *Id.* at 155.

The *Turrubiate* Court held that a police officer who enters a home without a warrant merely because he had probable cause to believe contraband was in that home, smelled marijuana, and identified himself to the occupant of that home violates the Fourth Amendment. *Id.* at 156. Here, there is no evidence that Officer Lee or any of the officers on scene smelled an illegal drug in or around the motel room or that the women inside the motel room were aware of the police presence outside the room until the officers opened the door while knocking and announcing their presence. In fact, Officer Lee testified that he "d[id no]t recall smelling anything [when he was] outside of the room" and that the two women in the room "appeared to be unaware that [the officers] were going to come into the room."[11]

_____

[11]The women's reactions to Officer Lee's initial entry into the room were captured on the video. The trial court was free to draw its own conclusions from this evidence, but its findings do not change our analysis because there was no evidence at

In *Igboji*, the Court of Criminal Appeals stressed that "the critical thing the record must show is facts suggesting an imminent destruction of evidence" and warned against "the type of impermissible presumption that a suspect will attempt to destroy evidence merely because he possesses it and is aware of police presence." 666 S.W.3d at 615–16. In this case, at the point when Officer Lee made his warrantless entry into Gipson's room, (1) the suspect had been apprehended; (2) Officer Lee did not know what evidence, if any, was in the room; (3) the women he heard talking inside the room had not been identified; and (4) there was no evidence that they were aware that the police were right outside the room. Based on these circumstances, we cannot uphold the trial court's ruling.

The State points us to the following evidence to support its contention that an exigent circumstance existed, necessitating Officer Lee's warrantless search of the room:

- Officer Lee "testified that there were individuals with cellphones in their hands standing around the front of the motel when Gipson [was] arrested."

- Officer Lee "was concerned that someone in that group might contact someone in Gipson's [motel] room who might destroy or move evidence."

---

the hearing that the women were aware of the police presence until the officers knocked and announced.

15

- "After getting a key to Gipson's [motel] room *but before entering the room*, Officer Lee was able to ascertain the presence of at least one woman in Gipson's [motel] room based on hearing her voice."

We reject the State's contention based not only on the precedent cited above but also on the case of *Johnson v. United States*, in which a local police officer and federal narcotic agents entered and searched a hotel room without a warrant after smelling "a strong odor of burning opium" that led them to the room. 333 U.S. 10, 12, 68 S. Ct. 367, 368 (1948).[12] Just like Officer Lee in the present case, the officers in *Johnson* "did not know who was occupying th[e] room."[13] *Id.* at 12, 68 S. Ct. at 368. The similarities do not end there:

> No reason is offered for not obtaining a search warrant except the inconvenience to the officers and some slight delay necessary to prepare papers and present the evidence to a magistrate. These are never very convincing reasons and, in these circumstances, certainly are not enough to bypass the constitutional requirement. No suspect was fleeing or

---

[12]The Court of Criminal Appeals has credited *Johnson* with establishing the "exigent circumstances" rule. *Parker v. State*, 206 S.W.3d 593, 598 n.21 (Tex. Crim. App. 2006).

[13]The officers and agents in *Johnson* knew that *someone* was in the room because, before entering, "[t]hey knocked and a voice inside asked who was there." *Id.* at 10, 12, 68 S. Ct. at 368. Like the women in Gipson's room, the defendant in *Johnson* "was not in flight, was completely surrounded by [law enforcement] before she knew of their presence, . . . and . . . made no attempt to escape." *Id.* at 16 n.7, 68 S. Ct. at 370 n.7. Also like the women in Gipson's motel room, "[u]ntil the officers, who already had probable cause, knocked on her door, the [person inside] was blissfully unaware of any police presence and was thus unlikely to flee or dispose of the contraband during the time the officers obtained a search warrant." *Parker*, 206 S.W.3d at 598 n.21 (discussing *Johnson*).

16

likely to take flight. The search was of permanent premises, not of a movable vehicle. No evidence or contraband was threatened with removal or destruction . . . .

*Id.* at 15, 68 S. Ct. at 369. As with *Turrubiate*, *Johnson* presents a case where law enforcement had a specific and articulable reason to believe that drugs or other evidence would be found in the particular location searched—the strong odor of an illegal substance—and the evidence still fell short of establishing exigent circumstances. Faced with a record showing an even lesser quantum of evidence, we are constrained to reach the same conclusion as the *Johnson* Court: "If the officers in this case were excused from the constitutional duty of [obtaining a warrant before entering and searching the room], it is difficult to think of a case in which it should be required." *Id.* at 15, 68 S. Ct. at 369.

These cases make clear that (1) probable cause to believe that evidence will be found (2) in a location in which an individual has a reasonable expectation of privacy, combined with (3) an awareness that one or more persons are at the location and *may* have access to the evidence and (4) the *possibility* that the evidence *could* be destroyed do not meet the standard for exigent circumstances to enter and search the location without obtaining a warrant.[14] Just as "police may not create their own exigency,"

---

[14]The Supreme Court has recognized this for over a century: "Belief, however well founded, that an article sought is concealed in a dwelling house[] furnishes no justification for a search of that place without a warrant. And such searches are held unlawful notwithstanding facts unquestionably showing probable cause." *Johnson*, 333 U.S. at 14 n.4, 68 S. Ct. at 369 n.4 (quoting *Agnello v. United States*, 269 U.S. 20, 33, 46 S. Ct. 4, 6, (1925)).

17

*Parker*, 206 S.W.3d at 598 n.21, we hold today that they may not imagine an exigency either, as Officer Lee did. In entering Gibson's motel room without a warrant and looking around—even if it was, as the trial court found, "a cursory sweep of the room to make sure there were no other persons in that room left behind who might destroy evidence"—Officer Lee took "disproportionate [action in response] to [a] perceived exigency." *See Gutierrez*, 221 S.W.3d at 686.

Because the record does not show "facts suggesting an imminent destruction of evidence" at the time that Officer Lee entered Gipson's motel room, his warrantless entry into and search of that room were not reasonable under the exigent-circumstances exception. *See Igboji*, 666 S.W.3d at 615; *see also Johnson*, 333 U.S. at 14, 68 S. Ct. at 369; *Turrubiate*, 399 S.W.3d 147, 153–55; *Burton v. State*, 339 S.W.3d 349, 354–55, 364 (Tex. App.—Texarkana 2011, no pet.) (holding that there were "insufficient facts to support law enforcement's 'exigent circumstance' entry" into a residence where an officer testified that he had received information about a "possible drug lab that was in the process of cooking methamphetamines" at the residence, that there was "a strong odor of ammonia coming from that location," and that it was "a hazardous situation" with "open flames" that could "cause fires or explosions, things like that"). Thus, the trial court erred in denying Gipson's motion to suppress on that basis.

## 2. No other exception to the warrant requirement applies.

Before we determine whether Gipson was harmed by the trial court's error—he was—we briefly examine the only other exception to the warrant requirement that might conceivably apply in this case—officer safety. Officer Lee testified at the hearing that he had stated in his probable cause affidavit that "a safety sweep of the room was conducted." The issue of whether this warrantless "sweep" was lawful under the Fourth Amendment was hotly contested at the hearing. Because we must uphold the trial court's ruling if it is both supported by the record and correct under any applicable legal theory, even if the trial court gave the wrong reason for its ruling, *Martin v. State*, 620 S.W.3d 749, 759 (Tex. Crim. App. 2021); *Armendariz v. State*, 123 S.W.3d 401, 404 (Tex. Crim. App. 2003), we will explain why Officer Lee's "sweep" of Gipson's motel room was unlawful.

A "protective sweep" is a "quick and limited search of premises, *incident to an arrest* and conducted to protect the safety of police officers or others." *Maryland v. Buie,* 494 U.S. 325, 327, 110 S. Ct. 1093, 1094 (1990) (emphasis added). In *Buie,* the Supreme Court concluded that "[t]he Fourth Amendment permits a properly limited protective sweep *in conjunction with an in-home arrest.*" *Id.* at 337, 110 S. Ct. at 1099 (emphasis added). Gipson was not arrested in his motel room. Officer Lee's sweep of the room, more than ten minutes after Gipson had been arrested and secured out in the parking lot, cannot be characterized as incident to the arrest. *See McGee v. State*, 105 S.W.3d 609, 615 (Tex. Crim. App. 2003) ("A search incident to arrest permits

19

officers to search a defendant, or areas within the defendant's immediate control, to prevent the concealment or destruction of evidence."); *see also Chimel v. California*, 395 U.S. 752, 768, 89 S. Ct. 2034, 2043 (1969) (holding that a warrantless search that "went far beyond the petitioner's person and the area from within which he might have obtained either a weapon or something that could have been used as evidence against him" was "unreasonable" under the Fourth Amendment). It was therefore not a lawful protective sweep.[15] *See Reasor v. State*, 12 S.W.3d 813, 817 (Tex. Crim. App. 2000) ("Since [the officer] failed to express a single articulable fact necessitating a protective sweep, we conclude this sweep was illegal.").

### 3. The error was not harmless beyond a reasonable doubt.

Because the error is constitutional, Rule 44.2(a) requires us to reverse Gipson's conviction unless we determine beyond a reasonable doubt that the trial court's denial of his motion to suppress did not contribute to the conviction. *See* Tex. R. App. P. 44.2(a); *Wells v. State*, 611 S.W.3d 396, 410 (Tex. Crim. App. 2020); *Hernandez v. State*, 60 S.W.3d 106, 108 (Tex. Crim. App. 2001) (holding that when evidence should have

---

[15]Because Officer Lee lacked a reasonable belief that anybody in Gipson's motel room, *after* Gipson himself had been arrested and taken into custody, was armed and dangerous, the protecting-police-officers category of exigent circumstances would not apply either. Officer Lee's general statement that "drug dealing is inherently dangerous" and speculation that the occupants of the motel room "could possibly be . . . gathering a firearm or other such item to harm officers" do not make this category of exigent circumstances applicable, in the absence of any evidence that the occupants of the room were aware of the officers' presence or were armed with any weapon.

been excluded under the Fourth Amendment, proper harm analysis is Rule 44.2(a)'s constitutional standard). "If there is a reasonable likelihood that the error materially affected the jury's deliberations, then the error was not harmless beyond a reasonable doubt." *Wesbrook v. State*, 29 S.W.3d 103, 119 (Tex. Crim. App. 2000); *see also Neal v. State*, 256 S.W.3d 264, 284 (Tex. Crim. App. 2008).

"As the beneficiary of the error, the State bears the burden on appeal to prove that the error is harmless beyond a reasonable doubt." *Hance v. State*, 714 S.W.3d 775, 834 (Tex. App.—Fort Worth 2025, no pet.); *see Haggard v. State*, 612 S.W.3d 318, 328 (Tex. Crim. App. 2020); *Wells*, 611 S.W.3d at 411. Thus, unlike nonconstitutional error under Rule 44.2(b), the State is required to come forward with reasons why the appellate court should find constitutional error harmless. *Hance*, 714 S.W.3d at 834. Here, the State offers no argument to satisfy its burden to rebut the presumption of harmful constitutional error. *See id.* at 835; *Haggard*, 612 S.W.3d at 328. Nevertheless, we have "an independent duty to determine harmlessness, regardless of whether the State briefed it." *Smith v. State*, 726 S.W.3d 466, 476 (Tex. Crim. App. 2025).

Our harmless-error analysis should not focus on the propriety of the trial's outcome but rather should focus on whether the constitutional error adversely affected the integrity of the process leading to the conviction. *See Wells*, 611 S.W.3d at 410; *see also Wesbrook*, 29 S.W.3d at 119 ("[T]he appellate court should calculate as much as possible the probable impact of the error on the jury in light of the existence of other evidence."). To that end, we "should take into account any and every

21

circumstance apparent in the record that logically informs an appellate determination whether 'beyond a reasonable doubt [that particular] error did not contribute to the conviction or punishment.'" *Snowden v. State*, 353 S.W.3d 815, 822 (Tex. Crim. App. 2011) (quoting Tex. R. App. P. 44.2(a)). The entire record is to be evaluated in a neutral manner and not in the light most favorable to the prosecution. *Wells*, 611 S.W.3d at 410–11.

After carefully reviewing the record and performing Rule 44.2(a)'s required harm analysis, we cannot determine beyond a reasonable doubt that the error did not contribute to Gipson's conviction. *See* Tex. R. App. P. 44.2(a); *Hale v. State*, 139 S.W.3d 418, 422 (Tex. App.—Fort Worth 2004, no pet.). The jury convicted Gipson on the possession-with-intent-to-deliver count related to the fentanyl but acquitted him on the count related to the cocaine, indicating a skepticism that he had possessed (or had the intent to sell) at least some of the drugs found in his motel room. And, although police had also found in Gipson's pocket "approximately 22 grams of light blue circular pills" that one of the officers identified as fentanyl, those pills were not tested. The only substance in this case that tested positive for fentanyl were pills seized from the motel room. On these facts, error in the admission of the illegally seized drugs is not harmless beyond a reasonable doubt. *See Burton*, 339 S.W.3d at 365. Accordingly, we sustain Gipson's appellate point.

## IV.  CONCLUSION

Having sustained Gipson's point, we reverse the judgment of conviction on count two and remand this cause back to the trial court for proceedings consistent with this opinion.  *See* Tex. R. App. 43.2(d), 43.3(a).

/s/ Brian Walker

Brian Walker
Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered: July 23, 2026